99 So.2d 467 (1958)
Ernest L. HOLMES
v.
The LE COUR CORPORATION et al.
No. 20872.
Court of Appeal of Louisiana, Orleans.
January 6, 1958.
*468 Hammett & Bertel, New Orleans, for defendants-appellants.
C. Wm. Bradley, Norco, for plaintiff-appellee.
JANVIER, Judge.
In the late afternoon of December 19, 1955, a very large motor truck of the LeCour Corporation, which was being driven at high speed on United States Highway No. 61 by Anthony Raphael, an employee, left the road just below the Bonnet Carre Spillway, in the Parish of St. Charles, crashed into several parked automobiles, continued through the "pump island" and into a building owned by Ernest L. Holmes, all of which property was used by him in his business in operating a restaurant and bar, service station and parking lot, doing great damage to the cars, the pump island, and the building.
As a result of the crash, a fire was ignited and the building was severely damaged with the destruction of some of the contents.
The LeCour Corporation had secured from Hardware Mutual Casualty Company a policy of public liability and property damage insurance, the property damage liability being limited to $5,000.
Alleging that the crash resulted from negligence of Raphael while acting within the scope and course of his employment by The LeCour Corporation and that the cost of repairing the damage and replacing the destroyed property and compensating him for his physical injuries amounted to $15,000, Holmes brought this suit against The LeCour Corporation, Hardware Mutual Casualty Company and Anthony Raphael, praying for solidary judgment against them in the sum of $15,000.
Defendants answered, admitting the occurrence of the accident, but denying the other allegations of the petition, and particularly denying the extent of the damage. The Hardware Mutual Casualty Company, while admitting that it had issued the policy referred to, averred that there was a limit of liability in the policy and that "other claims have been made against said policy in excess thereof."
After a lengthy trial, there was judgment in favor of plaintiff solidarily against all three defendants in the sum of $7,500 for destruction of and damage to property, and in the further sum of $500 for personal injury. The judgment provided, however, that "the solidary judgment for property damage insofar as it runs against Hardware Mutual Casualty Company is limited to the sum of $5,000.00."
In a motion for a new trial, among other complaints of all three defendants, Hardware Mutual Casualty Company averred "that said judgment is beyond the policy limits of Hardware Mutual Casualty Company particularly in that other claims are pending against said company as shown by the evidence submitted on the trial of this case."
The requested new trial was refused, and the matter comes to us on suspensive appeal by all three defendants.
When the matter was submitted we entertained some doubt as to our jurisdiction *469 ratione materiae. The amount in dispute exceeds our maximum jurisdictional limit except where physical injuries are involved, and a reading of the record left us with the initial impression that, although in his petition plaintiff claims $2,500 for "mental anguish, shock and suffering * * *," there actually were no traumatic physical injuries which would justify recovery in damages.
Although plaintiff claims $2,500 for this item of damage, only $500 was allowed him and the evidence falls far short of justifying even that amount.
Plaintiff himself was not struck by the truck or by any other object, his only physical injury, if it can be called physical, being the alleged nervous and "mental anguish" which he says he sustained as a result of being an eye witness to the crash and of realizing that his property was so severely damaged.
When we considered the evidence as to the extent of his mental anguish and the result of his nervousness, we found that this evidence is limited to a short statement of his own and to a very short statement of his doctor. He himself said that he "was not feeling too good," that his doctor told him that "all I had was that I was nervous," and gave him some medicine to quiet his nerves and said that if he did not "take care" he "would wind up with an ulcerated stomach." The doctor stated that "he was in a rather marked state of nervousness * * * and was very jumpy," and told him "to take it easy" and "gave him sedatives." The doctor found nothing physically wrong with him, stating that his only functional complaint was nervousness.
Were it not for decisions of our Supreme Court and of ourselves, we would be strongly inclined to the view that the plaintiff sustained no traumatic injury and that his so-called mental anguish and shock were of such slight intensity that he in fact suffered no physical injury and consequently we would be deprived of jurisdiction by reason of the fact that the only damage was to property and not to person and that since that damage exceeded $2,000, this Court would not have jurisdiction ratione materiae. However, it seems to be settled that there may be recovery for mental anguish accompanied only by property damage, and that where there is such mental anguish it should be considered as a physical injury. In McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21, 24, the Supreme Court said:
"We do not understand that the Wolf case (Wolf v. Stewart, 48 La.Ann. 1431, 20 So. 908) holds that damages for mental anguish cannot in any event be recovered in addition to property damages. As we understand the decision, all it holds is that the act alleged, in that case, was not such an act as could cause mental anguish for which damages could be allowed; that the act of defendant in raising the height of the fence eight feet and his refusal to remove the addition to the fence under the conditions alleged was not actionable since no aggravated conduct or act of the defendant was set forth. But it is now well settled that damages for mental anguish or suffering are actual rather than exemplary or punitory. Bourg v. Brownell-Drews Lbr. Co., 120 La. 1009, 45 So. 972, 124 Am.St.Rep. 448. And that actual damages resulting from a wrongful act are not limited to the pecuniary loss sustained thereby. They extend also to the mental, as well as to physical suffering caused by the act. Bryne & Co. v. Gardner & Co., 33 La.Ann. 6."
We ourselves discussed this question in Pecoraro v. Kopanica, La.App., 173 So. 203, 204, saying:
"There are divergent views in various jurisdictions concerning the rights to recover damage for fright or nervous shock unaccompanied by physical injury *470 evidenced by objective symptoms, and in many courts it is held that the opportunity for fraudulent exaggeration in such situations is so great that it is best to permit no recovery, unless the nervous condition can be shown to result from actual physical injuries of which there is objective evidence. In Louisiana, however, it is settled that, even though there may be no actual objective symptoms of injury, there may be recovery for nervous shock if the evidence concerning such nervous condition is sufficient to warrant the belief that such injury was actually sustained."
Since there may be recovery for mental anguish and since such mental anguish is treated as physical injury, we feel that we have jurisdiction although the amount recovered on this item of damage should be very small and although the real damage to the property exceeds $2,000. We are, however, convinced that the amount allowed for physical injuries ($500) is grossly excessive and should be reduced to $200.
Although defendants in their answer denied liability, it is now conceded that the damage was caused by the negligence of the driver of the truck while acting within the course and scope of his employment, and that consequently the three defendants are solidarily liable, the insurance company, however, only within its policy limits.
Thus the only matters now in dispute are the extent of the physical injuries of plaintiff, the extent of the property damage, and the cost of making the repairs.
We have already discussed the physical injuries and have decided that under no circumstances should more than $200 be allowed.
While plaintiff has not answered the appeal, his counsel in brief and in oral argument have declared that not only is the amount awarded, $7,500, not excessive, but that the evidence shows that in fact plaintiff is actually entitled to $8,608.25 for damage to property and $500 for mental anguish, suffering, etc., and in his brief has submitted a detailed list of the various items of damage and the amounts which he says have been proven. Since counsel for defendants have taken this list and used it as the basis for their argument, that some of the amounts allowed are incorrect and that some should be eliminated entirely, we have found it advisable to use this list as the basis for discussion of the various items in an effort to determine which are correct, which are entirely erroneous, and which should be amended. That list as it is found in the brief of counsel for plaintiff is as follows:

"1. Repairs to building ........................ $ 351.25
 2. Depreciation of building ................... 1,000.00
 3. Loss of merchandise ........................ 250.00
 4. Repairs and depreciation of equipment
 and fixtures .............................. 154.00
 5. Inconvenience to plaintiff40 days ... 1,000.00
 6. Cost to repair pump island and driveways ... 853.00
 7. Total loss of revenuesfour and one-half
 days ...................................... 500.00
 8. Loss one-half revenues for 40 days ......... 2,500.00
 9. Loss on contract ........................... 1,100.00
10. Loss from adverse publicity ................ 900.00
 ________
 Total ..................... $8,608.25
11. Mental anguish, shock, suffering ........... 500.00
 _________
 $9,108.25"

The first item shown on the above quoted list amounts to $351.25 for repairs to the building. This item, conceded to be due by defendants, is arrived at in the following manner.
Plaintiff had secured from his own insurance company a policy of fire insurance, and after the occurrence that company conceded its liability for such amount as might be required to repair the fire damage. Bids were requested from contractors and the bid of a general contractor, Frank E. Lamantia, amounting to $1,495 was accepted. This bid included the repairing of "vehicular" damage, as well as "fire" damage, and plaintiff's fire insurance company approved the bid insofar *471 as fire damage was concerned. The work was done, the plaintiff paid the contractor the full amount, and obtained from his fire insurance company reimbursement for the fire damage, which it is conceded amounted to $1,143.75, so that the plaintiff himself, out of his own funds, paid the remainder, $351.25.
It should be noted that plaintiff gave to his fire insurance company a subrogation amounting to $1,143.75, transferring to that company all of his rights against the tort-feasors. As a result of this, it becomes very evident that the tort-feasors, because of the subrogation, are entitled to claim and have claimed from the defendants the amount which that company paid to-wit $1,143.75. Thus it is obvious that the Hardware Mutual Casualty Company whose policy for property damage was limited to $5,000 should not have been cast for the full $5,000 since, by his own actions, plaintiff transferred a portion of his claim against said Hardware Mutual Casualty Company to his own fire insurance company. However, at this stage of the discussion all that is necessary is to state that on this item plaintiff claims only the amount shown, $351.25, and defendants concede liability for that amount.
Item No. 3, loss of merchandise, for which plaintiff claims $250 is conceded to the extent of $200. However, defendants maintain that the additional $50, said to represent the value of certain liquor lost by breakage after the fire, has not been conclusively shown and the evidence on this question is very meager indeed. All that plaintiff says is that he had whiskeyhow much is not shownand that the bottles were broken in boarding up the openings of the building on the evening of the fire.
Defendants concede that they owe $154 for repairs and depreciation of equipment and fixtures. In their brief they assert that this item amounted to only $128, but in oral argument it was conceded to amount to $154.
The item shown as No. 6, amounting to $853 for repairing of the "pump island" and "driveways", is conceded to the extent of $653.74. However, the record is very confusing as to this particular item for the reason that we cannot tell whether it includes the value of the pumps or not. These pumps seem to have belonged, not to plaintiff, but to the Shell Oil Company and, as already stated, the evidence on this item is not at all convincing.
The other major items shown are: Depreciation of building, $1,000; inconvenience to plaintiff, 40 days, $1,000; total loss of revenue, 4½ days, $500; loss one-half revenues, 40 days, $2,500; loss on contract, $1,100; loss from adverse publicity, $900. We shall discuss these various items.
Let us consider the claim of depreciation of building. The bid of the contractor which was accepted was intended to cover, according to its terms, not only the repairs caused by the fire damage, but the repairs made necessary by the vehicular damage. It is, however, contended that in spite of all repairs which could be made there nevertheless resulted a depreciation in the value of the building.
Of course, it is true that when property sustains damage and the damage is repaired there may result a depreciation in value, and if there was such depreciation in value, plaintiff would be entitled to some recovery, but the evidence is so meager that we cannot determine just what depreciation has actually resulted.
We feel that there should be no allowance whatever on the item for inconvenience to plaintiff. He is making a substantial claim for his loss of revenue, and his evidence as to inconvenience is such that it does not justify financial recovery.
Plaintiff claims "for loss on contract" $1,100. Here again the evidence is so sketchy that we cannot determine whether *472 there was such a loss and, if there was, just what it amounted to. It is very obvious, however, from his own testimony that there was no "contract." This claim is based on the following facts.
A general contractor operating in the neighborhood was using from 35 to 40 dump trucks, some of which belonged to him and some of which were hired from other persons. As each of those dumptruck drivers would deliver a load, this contractor would give to the driver a ticket which the driver could later turn back to the contractor for cash. The plaintiff, Holmes, customarily cashed many of these tickets, giving the cash to each driver after deducting such amount as the driver might owe him for gasoline and oil furnished to the truck. In the first place, there is no definite showing as to how many of these trucks followed this practice, nor as to how much gasoline and oil was purchased, nor as to the profit made on this gasoline and oil. Plaintiff contends that by this method he disposed of from fifteen to twenty thousand gallons of oil each week, but this figure is a mere guess on his part and he offers no evidence to show just what profit there was in this business. Furthermore, the record indicates that some of these truck drivers returned to do business with him about two weeks after the occurrence. It may be that evidence on this question can be produced and therefore we feel that this item should not be dismissed in its entirety.
When we come to consider the item of $500 claimed for total loss of revenues for four and one-half days and the item claimed amounting to $2,500 for loss for one-half of revenues for forty days, we find again no positive evidence as to just what these losses amounted to. In his effort to substantiate these claims plaintiff produced cash register slips, showing the total amount of cash sales on three obviously selected days prior to the fire, and he also produced cash register slips showing the total amount of sales on four obviously selected days after the fire. Plaintiff selected as the three dates to show his average daily receipts before the fire, September 2, September 10 and September 14. Why these particular days were selected is not shown. The average for these three days was $203.65, and counsel for plaintiff contends that since he was not able to operate at all for four and one-half days after the fire, the loss for those days amounted to four and one-half times $203.65. This argument completely overlooks the fact that there is not one scintilla of evidence in the record which shows the cost of the materials, such as gasoline or oil, or the cost of services, and it is certain that we cannot determine the profit which plaintiff made on these three days without knowing what was his cost of operation.
The same may be said as to the claim for $2,500 as one-half of the loss for the forty days following reopening of plaintiff's service station and restaurant. It may be that plaintiff sustained substantial loss, but we certainly cannot determine from this record what that loss amounted to. Some figures must be given to show the cost of materials and the cost of operation.
One additional item remains, that is, the claim of $900 for adverse publicity. This claim is based on the statement of plaintiff that the driver of a school bus, which had customarily stopped there and had bought gasoline from him, no longer uses that route because parents of the children stated that plaintiff's establishment is too dangerous. This claim is so completely speculative that it cannot be considered at all.
Our conclusion is that, since certain of the items claimed are conceded and since it is evident that plaintiff may be entitled to recover some amounts on some of the items which we have discussed, it would not be fair to reduce the judgment merely to those items which are conceded and to dismiss entirely the remainder of plaintiff's claim. We have concluded to remand the matter in order that plaintiff may be afforded an opportunity to produce evidence which will, to some reasonable extent, show the actual *473 loss on those items which we have discussed and for which some allowance of damage possibly should be made.
The judgment appealed from is annulled, avoided and reversed and the matter is remanded to the Twenty-ninth Judicial District Court for the Parish of St. Charles for further proceedings in accordance with the views we have expressed herein and according to law.
Reversed and remanded.