184 So.2d 271 (1966)
Dan NICKENS et ux.
v.
C. A. McGEHEE et ux.
No. 6594.
Court of Appeal of Louisiana, First Circuit.
February 28, 1966.
Rehearing Denied April 4, 1966.
Writ Refused May 19, 1966.
*272 Ralph M. Kelton, of Kelton & Taylor, Baton Rouge, for appellants.
John T. Caskey, Jr., and Jack N. Rogers, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
Plaintiffs, Mr. and Mrs. Dan Nickens, tenants under lease of a small frame residence, instituted this action against their lessors, Mr. and Mrs. C. A. McGehee, and said landlord's insurer, Standard Accident Insurance Company, to recover the value of plaintiff's household furnishings, clothing and personal effects lost in a fire which occurred February 25, 1963, destroying virtually all the contents of the rented house. Defendant lessors filed a third party petition against their aforenamed insurer, (sometimes hereinafter referred to simply as "Standard Accident"), which corporation had issued lessors an "Owners', Landlords' and Tenants' Liability Policy" covering liability for claims for bodily injuries occurring on the leased premises. Upon motion by said third party defendant for summary judgment, the third party demands asserted by defendant owners were dismissed. Application for writs by third party plaintiffs to this court were denied.
Following trial on the merits below and while the matter was under advisement by the lower court, defendant C. A. McGehee died. By proper proceedings said decedent's heirs, Byron Alsen McGehee and Mrs. Doris McGehee Jones, were substituted as defendants in his stead.
Judgment was rendered by the trial court in favor of plaintiff Dan Nickens and against defendants, in solido, in the aggregate of $2,279.21, which award included the sum of $350.00 for mental anguish, and in favor of Mrs. Verbie Nickens in the sum of $350.00 for mental suffering. From the aforesaid judgment, defendants have appealed. In his brief before this Court counsel for plaintiffs has asked for an increase in the amounts allotted appellees for mental pain and anguish. *273 Our search of the record fails to disclose that plaintiffs have either appealed or answered defendants' appeal. Under such circumstances plaintiffs' request for an increase in their respective awards cannot be considered.
Plaintiffs' cause of action is predicated upon the provisions of LSA-C.C. Article 2695 which reads as follows:
"Art. 2695. Lessor's liability for damages from vices and defects
Art. 2695. The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
In applying the pertinent codal authority the courts of this state have consistently held that the tenant seeking damages thereunder bears the burden of establishing his claim by a fair preponderance of evidence. Sabin v. C & L Development Corporation, La.App., 141 So.2d 482; Castain v. Lograco, La.App., 152 So. 153; Boudro v. United States Fidelity & Guaranty Co., La. App., 145 So. 294; Potter v. Soady Building Company, La.App., 144 So. 183; Cosey v. Scott, 17 La.App. 680, 137 So. 361.
It will be noted that to recover under the applicable law, the lessee must establish by a reasonable preponderance of evidence that a vice or defect existed in the premises and that such vice or defect results in the loss or injury for which damages are sought. Under the clear terms of the article, it is immaterial whether the lessor knew of the existence of the vice or defect. Sabin v. C & L Development Corporation, supra. (The record in the present case, however, reveals notice of the defect communicated to lessors approximately ten days preceding the fire). Of further significance is the provision that the lessor is relieved of responsibility in the case of a vice or defect arising from the fault of the lessee after the lease was made.
For purposes of setting forth the issues raised by the present appeal, it suffices to say that plaintiffs maintain the fire resulted from defective electrical wiring notice of which was given defendant owners prior to the fire.
In essence counsel for appellants asserts the trial court erred in the following principal respects: (1) In finding that the fire originated from defective electrical wiring contrary to the evidence which shows the conflagration commenced from the water heater; (2) Finding the electrical wiring defective as a matter of fact; (3) Permitting plaintiffs to "guess" as to the value of their personal property destroyed in the fire; and (4) Allowing petitioners damages for mental pain and anguish. In addition, counsel for appellants assigns certain alleged errors with respect to incidental factual determinations and statements appearing in the trial court's reasons for judgment, hereinafter enumerated when deemed necessary to adjudication of the issues before us.
Originally put at issue was the question whether the leased premises belonged to the community of acquets and gains existing between defendant lessors and the proposition whether defendant husband was mentally competent at the time of the property's purchase and lease to plaintiffs. Although counsel for appellants complains of an erroneous statement of fact in the trial court's reasons for judgment relative to said defendant's competence, nevertheless he concedes in brief the matter is no longer a material issue. Under such circumstances we will consider this contention abandoned.
The residence in question consisted of a small, three-room, frame structure commonly *274 referred to as a "shot-gun" type house, signifying an edifice whose rooms are one behind the other. The sides of the building were finished with asbestos shingles. The dwelling faced in a westerly direction and had a porch across its front. The front room or room adjacent to the porch was used as a living room behind which was a bedroom in turn followed by the kitchen. The area comprising what was formerly the northeast corner of the bedroom and northwest corner of the kitchen was separately partitioned as a bathroom. Plaintiffs had resided in the house for slightly more than a year preceding the fire.
Illumination for the living room was provided by means of an open socket attached to the ceiling into which could be inserted an ordinary light bulb. A switch located on the door frame provided the means for turning the light off and on. Into this socket, Mr. Nickens inserted a double socket thus providing facilities for both a light bulb to illuminate the room and a plug to accommodate an extension cord to supply electricity to another appliance, in this instance the Nickens television set.
Approximately ten days prior to the fire, Mrs. Nickens was ironing in her living room, (the iron being plugged into a wall socket in the bedroom), when she noticed smoke coming from the living room ceiling where the aforementioned socket was situated. She instantly ran outside to the meter box and pulled the main switch thus cutting off the current entirely. Immediately thereafter she went to the home of her sister who lived nearby from whence she telephoned Mrs. McGehee and advised her said landlord of the occurrence. Mrs. McGehee called her maintenance man, a Mr. Jensen, and requested that he investigate plaintiff's complaint. Jensen, being ill and unable to attend to the matter personally, sent his brother-in-law and assistant, Sam Kimble, to repair the electrical defect. Mr. Kimble went to the Nickens home and made a very brief and cursory examination which consisted solely of his removing the double socket from the living room ceiling, screwing it into another socket in the bedroom and thus ascertaining that it worked properly, reinserted it into the socket in the living room ceiling. Following this single examination he switched the electricity back on and left.
A dispute of some significance exists as to part of the conversation that transpired between Kimble and plaintiff when the former made the investigation previously noted. Plaintiff contends Kimble advised her the wiring was old and would eventually cause troubleperhaps in a day or two, perhaps in a week or a year but in any event sooner or later. Kimble, on the other hand, readily conceded he informed plaintiff the wiring was old as was the house also, but denied he told her it would cause trouble.
Upon leaving the house, Kimble advised Jensen of what he discovered. Jensen in turn called Mrs. McGehee and informed her Kimble found nothing wrong. It is admitted that neither Kimble nor Jensen were qualified electricians, both being in the category of handyman or so-called jack of all trades.
On the day of the fire, Mrs. Nickens had been waxing her floors and upon completing this chore as she expressed it, she "waxed herself out of the house" and went to her sister's home nearby to pass the time until her floors dried. While visiting with her sister, the alarm was sounded.
We shall consider first appellant's related contentions the trial court erred in finding the electrical wiring defective and concluding the fire commenced from the wiring rather than from the water heater in the bathroom.
In this regard appellants argue Mrs. Nickens' testimony concerning the smoke emanating from the living room ceiling approximately ten days prior to the fire should be disregarded as it is uncorroborated in the record. It is quite true that Mrs. *275 Nickens is the only witness who testified to said circumstance, but Mr. Kimble and Mrs. McGehee both acknowledged that Mrs. Nickens reported the incident to them. Mr. Kimble further admitted when he arrived to investigate the complaint the electricity was turned off. Nothing in the record suggests a reason for Mrs. Nickens to falsely report the condition of the wiring.
The evidence establishes beyond doubt that when the fire was first noticed, smoke was emerging from the center of the house in the vicinity of the bedroom window. Photographs in evidence reveal the greatest amount of smoke stain above the bedroom windows on both sides of the house. They also disclose considerable blackening all along the eaves on the north side of the structure. The testimony is preponderately to the effect the fire originated in the loft over the bedroom rather than the living room.
Appellants adduced from Mr. Donald Petrere, fireman and District Fire Prevention Chief, testimony to the effect that smoking electrical wires may result by overloading a circuit as well as by defective wiring. Nothing in the record, however, indicates the circuits were overloaded. Not one witness so testified and from Mrs. Nickens' narration regarding the appliances and electrical apparatus in use in the house, no inference of overloading can be drawn. We note, however, the testimony of Mr. Petrere to the effect that defective wiring is a major cause of fires in old buildings.
Appellants attempted to show that the fire could have originated from the water heater installed in the bathroom a few months prior to the fire at plaintiffs' request. The heater was placed against the interior or partition wall of the bathroom. Mr. Petrere, the fireman in charge of the crew answering the alarm, indicated on his report the water heater as being the probable cause of the fire. His testimony shows, however, this was purely speculation on his part because, there being no indication of arson, he made cursory examination of the premises following the fire. He explained further that where there is no cause to suspect arson, no concerted effort is made to determine cause. He admitted he was not certain the fire originated in the water heater and conceded it could as easily have been due to defective wiring. The gist of his testimony is clearly to the effect he did not know what caused the fire and listed the water heater merely as a probable cause. In addition, he testified that following the fire, the examination he made on going through the ruins was solely to determine that the fire was entirely extinguished.
Photographs taken some time following the fire, before repairs were made, revealed the wall and wallpaper immediately adjacent to the water heater were unaffected by the fire to a height approximately four feet above the burner and firedoor. Photographs of the reverse side of the partition against which the heater stood show that the heater apparently insulated the wall to some extent in that the general outline of the water tank is shown on a virtually unaffected portion of the wall while the area to each side, and particularly above, is charred considerably. Moreover, the bathroom itself shows little fire damage in comparison to the charring evident on the opposite sides of the partition walls in the bedroom and kitchen. The most intense fire apparently occurred in the attic over the bedroom where the entire ceiling was destroyed. The wall between the bedroom and kitchen received considerable damage; the ceiling in the kitchen was partially destroyed and the least damage appears to have occurred in the living room where the ceiling was severely charred, but still in place.
Mr. Petrere testified he has experienced fires resulting from defective water heaters where the fire did not originate exactly at the point where the heater was installed but rather in the flue or possibly in the attic where a spark has escaped from the duct. As previously indicated, he stated he *276 had no knowledge as to how the fire commenced and readily acknowledged it could as easily have started from defective wiring as from the heater.
We believe the evidence clearly preponderates in favor of the trial court's conclusion the fire started from defective wiring. While plaintiffs must establish their claim by a fair preponderance of evidence, this does not mean they must do so beyond all doubt. In the instant case, we believe the only reasonable inference to be drawn from the evidence as a whole is that the fire did in fact start from defective wiring. It is clear beyond doubt the conflagration commenced in the attic or loft where the electrical wiring was present. It is likewise established that prior to the fire the occupants had experienced difficulty with the wiring and that the efforts by the lessor to remedy the defect reported were totally inadequate in that they consisted solely in the dispatching of an unqualified handyman who admittedly made no attempt to check the wiring. Whatever was wrong with the wiring on the occasion Mrs. Nickens experienced the difficulty prior to the fire remained uncorrected to the day of the fire. Conceding it within the realm of possibility the fire started from the water heater, nothing in the record indicates a defect in the heater. On the other hand, the only proven defect likely to cause a fire was the defective wiring. In view of such circumstances, we believe the evidence establishes the reasonable presumption the fire resulted from defective wiring in the attic.
We next consider appellants' contention plaintiffs were improperly permitted to "guess" at the value of their belongings to establish the value of articles lost in the fire. In Stewart v. Palmisano, La.App., 31 So.2d 27, a similar contention was made in that the defendant argued plaintiff had not established her alleged damages with certainty and that the valuations placed on items in a detailed list submitted in evidence were too vague and indefinite to support plaintiff's claim. The trial court awarded plaintiff one-third of the value of the articles particularized and in affirming the trial court's decree the appellate court remarked:
"It is a matter of common knowledge that a householder accumulates his effects over a period of years, and that they are purchased from time to time in various establishments. In the event of a casualty such as fire, one usually is only able to state the cost price of each article from memory. Under the circumstances of this case, it would be unreasonable to expect Mrs. Loflin to prove her damages by any other means. She undoubtedly suffered an extensive loss by reason of the fire, and while the method used by the trial court in computing the amount of the judgment may not be the best that could have been pursued, it seems to us a fair way of arriving at the loss sustained by plaintiff, and we fail to see any error in the judgment."
We are in complete accord with the quoted views expressed by our colleagues in the Palmisano case, supra, since it constitutes a fair and reasonable solution to a most perplexing problem.
In the present matter, plaintiffs presented an itemized list of the contents of the house compiled largely from memory but aided to some degree by invoices secured from merchants from whom certain major appliances were purchased shortly before the fire. The list, which described each article, together with plaintiffs' estimate of the cost thereof, aggregated the sum of $3,858.42. The cost price of some items admittedly included interest and carrying charges added because the object was purchased on the installment plan. Mr. Petrere estimated the value of the contents of the house at approximately $4,500.00. Defendants, on the other hand, produced Mr. John Glover, a dealer in second-hand goods, used furniture and household furnishings who *277 estimated the market value of each item as secondhand merchandise. His valuations were, of course, given without having seen any of the articles in question. He stated his valuations were based on the assumption each object was in good condition. His appraisals were not totalled but in general the valuations he placed on each article was considerably less than the valuations placed thereon by plaintiffs.
Ordinarily the measure of recoverable damages to property is the cost of restoration irrespective of market value, and the value of the lost use. Maryland Casualty Company v. Rittiner, La.App., 133 So.2d 172; Hebert v. T. L. James & Co., La.App., 72 So.2d 754.
In the instant case our learned brother below awarded damages in the sum of one-half the itemized list attested by plaintiffs. Where damages cannot be accurately measured or proven, the trial court is vested with considerable discretion in the assessment thereof as may be warranted by the facts and circumstances of each particular case. Sutherlin Sales Co. v. United Most Worshipful St. John's Grand Lodge of Ancient Free and Accepted Masons, La.App., 127 So.2d 253. An award made under such circumstances will not be disturbed unless it appears the trial court has abused its discretion in fixing the amount thereof. Harness v. Toye Bros. Yellow Cab Co., La.App., 170 So.2d 737; Bethancourt v. Employers' Liability Assur. Corp., La.App., 153 So.2d 921. In the present case we deduce that the able trial court gave due consideration to all pertinent circumstances and did not abuse its discretion.
There remains the issue of damages awarded plaintiffs for mental anguish. The law of this state appears well settled to the effect damages are recoverable for mental anguish resulting from injury to one's property. McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21; Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845; Hayward v. Carraway, La. App., 180 So.2d 758; Belgarde v. City of Natchitoches, La.App., 156 So.2d 132, and cases therein cited.
Learned counsel for appellants maintains that since their third party petition against Standard Accident, their insurer, was dismissed by the trial court and this tribunal dismissed their application for writs to review said ruling with the notation the decree was correct, the issue of damages for mental pain and anguish is foreclosed and the trial court was without authority to allow recovery for this item.
The record discloses the policy issued by Standard Accident obligated said insurer "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined." (Emphasis added by the Court.)
Appellants' contention arises from understandable confusion regarding the nature of the demand for damages for mental anguish. In Holmes v. LeCour Corporation, La.App., 99 So.2d 467, the Court of Appeal, Orleans stated:
"However, it seems to be settled that there may be recovery for mental anguish accompanied only by property damage, and that where there is such mental anguish it should be considered as a physical injury.
* * * * * *
"Since there may be recovery for mental anguish and since such mental anguish is treated as physical injury, we feel that we have jurisdiction * * *." (Emphasis added.)
The court in the Holmes case, supra, cites McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21 and Pecoraro v. Kopanica, La.App., 173 So. 203, in support of its conclusion. While we are in agreement with the result reached in the Holmes case to *278 the extent it holds damages are recoverable for mental pain and anguish resulting from the tortious destruction of one's property, we do not acquiesce in that portion of the decree indicating mental pain and anguish is assimilated to physical injury. Our appreciation of the McGee case, supra, is that it held merely that mental anguish and suffering are compensable items notwithstanding an absence of injury to one's person. The language of the McGee case, supra, cited in the Holmes decision, supra, held only that mental pain and suffering are actual as distinguished from punitive or exemplary damages and as such recoverable under certain circumstances. We find nothing in the McGee case, supra, suggesting that mental pain and suffering is categorized and to be considered the equivalent of bodily injury. We likewise believe the holding in the Pecoraro case, supra, contrary to the hereinabove emphasized language appearing in the Holmes case, supra, inasmuch as in the Pecoraro case the court was considering whether plaintiff was entitled to recover damages for fright or nervous shock "unaccompanied by physical injury evidenced by objective symptoms."
It is well settled that mental anguish is an item of damages which may arise from injury to one's property as well as one's person. McGee v. Yazoo & M. V. R. Co., supra. Such an element of damages may likewise originate from other actionable causes, such as invasion of privacy, slander, other similar tortious actions and from breach of contract. Appellants-Lessors, therefore, are clearly liable to plaintiffs for damages for mental pain and suffering incident to the destruction of the property of the latter, under the well established jurisprudence of our appellate courts.
Whether or not appellants' liability insurer is likewise responsible depends upon the provisions of the policy. The insurer is subject to holding the insured harmless only from those risks covered in the policy. The policy in question undertakes to guarantee the insured against claims arising from "bodily injury." The words of a contract are to be construed in their usual and common signification and interpreted according to their general and popular use rather than in conformity with rules of grammar. LSA-C.C. Art. 1946.
In its usual significance the term "bodily injuries" is understood to mean hurt or harm to the human body or some member thereof by contact with some external force or violence either accidental or intentional. In this respect the terms "bodily injury" and "physical injury" appear to be synonymous considering each contemplates actual physical harm or damage to a human being. However, mental distress, unaccompanied by bodily injury resulting from the application of some external force to an individual, is not generally regarded as physical or bodily injury. It is, nevertheless, within the purview of the term "personal injuries" which classification is not confined to "physical or bodily injuries" but extends to injuries to one's feelings and emotional distress or disturbance resulting from abuse, slander or libel, Martin v. Derenbecker, 116 La. 495, 40 So. 849; and in some instances from breach of contract, Lewis v. Holmes, 109 La. 1030, 34 So. 66, 61 L.R.A. 274.
Mental pain and distress occasioned solely by slander or defamation of character do not constitute "physical or bodily injury," nor do they give rise to damages by reason of "physical injury." Hepting v. Durand, La.App., 126 So. 571; Fernandez v. Hannagriff, 141 So. 469.
Damages for wrongful arrest and imprisonment do not result from "physical injuries." Barfield v. Marron, et al., 17 So.2d 850.
Since plaintiffs herein sustained no bodily injury, there was no coverage under the policy issued by their insurer, Standard Accident. It would be another matter, however, if the policy insured lessors against claims for property damage in which latter event the insurer's liability would attach to all facts of such a claim, *279 including claims for mental anguish for which lessors might be liable as a result of property damage wrought.
Assessment of damages for mental pain and anguish is a matter largely within the discretion of the trial court. LSA-C.C. Art. 1934; McGee v. Yazoo & M. V. R. Co., supra. Our careful consideration of the record discloses our learned brother below has exercised the discretion vested in him within the tolerance permitted by law.
Accordingly, the judgment of the trial court is affirmed at appellants' cost.
Affirmed.