LANDRY, Judge.
Plaintiffs, Derle and Lorena Long, lessees of a residence owned by defendant Charles McMichael, bring this action against their said landlord and his insurer, Hartford Accident and Indemnity Company (Hartford) to recover the value of household furnishings, clothing and personal effects lost when the dwelling was destroyed by fire. Trial of the cause by jury resulted in a verdict for plaintiffs pursuant to which judgment was entered against defendants in the sum of $6,400.00. From this adverse determination defendants have appealed. Plaintiffs have neither appealed nor answered defendants’ appeal.
Appellants complain of error in that plaintiffs failed to prove McMichael’s liability by a preponderance of evidence as required by law. Alternatively, defendants contend plaintiffs failed to establish the measure of their alleged damages with that degree of certainty demanded for recovery thereof. In the final alternative, defendants maintain the award was excessive and should be reduced.
Upon review of the record we conclude appellants’ first point is well taken in that the record before us does not establish defendants’ liability by a preponderance of the evidence. The decision reached on this issue impels reversal of the judgment rendered below and eliminates the necessity of our considering either of the two remaining questions posed by appellants herein.
The law governing the rights and obligations of the litigants at bar is contained in LSA-C.C. Article 2695, which reads as follows :
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
Our courts have repeatedly held the applicable statute requires that a tenant seeking damages thereunder must establish his claim by a fair preponderance of evidence. See Nickens v. McGehee, La.App., 184 So.2d 271, and authorities therein cited. Negligence on the part of the owner or lessor is not an indispensable prerequisite to recovery by the tenant in such instances. Nickens v. McGehee, supra. Nor is knowledge on the part of the lessor of the existence of the defect required for the tenant’s recovery. It suffices if the defect exists and is established as the cause of thq loss, damage or injury. Sabin v. C & L Development Corporation, La.App., 141 So. 2d 482.
The occurrence of an accident or fire on leased premises does not give rise to the presumption the owner was negligent or failed to keep his premises in repair. Dunn v. Tedesco, La.App., 93 So.2d 339.
The preponderance of evidence exacted of the tenant or lessee does not mean proof beyond a reasonable doubt. It contemplates, however, evidence sufficient to establish plaintiff’s claim to a reasonable *812 certainty and beyond the realm of mere possibility, speculation or conjecture. Dunn v. Tedesco, supra.
Succinctly stated, plaintiffs’ causes are based on the contention the fire was electrical in origin, more specifically that the conflagration resulted because of faulty electrical wiring.
Plaintiffs were married approximately one month before the occurrence of the fire which happened at about 3:00 P. M., March 22, 1965. Three of Mrs. Long’s four children by a former marriage, namely, Carl, Randy and Denise Bayhi, ages 11, 10 and 8, respectively, were in the residence when the fire was discovered.
In substance, the named children testified they returned home from school as usual and were alone in the home because Mrs. Long was at work, Mr. Long had departed a few minutes earlier on a personal mission and their remaining sister had not yet arrived from school. Carl, the eldest child, smelled smoke which circumstance prompted an investigation to determine the source. Upon opening the closet in his bedroom, Randy observed the clothing therein was aflame and fire was also coming from the attic. They attempted to extinguish the fire with water but quickly realized the futility of their efforts. Carl then telephoned his mother who instructed him to vacate the residence.
A schematic (unsealed) drawing of the floor plan of the residence appearing in evidence discloses the dwelling to be a rectangular three bedroom home. On the extreme right of the structure (as one views it from the front), the kitchen runs the entire depth of the building from front to rear. At the opposite end (or left when viewed from the street) are situated two bedrooms, one at the front and the other at the rear, the former being known as the “girls’ room” and the latter being designated “master bedroom.” Between the kitchen and the two mentioned bedrooms is the living room behind which is a hall running from the kitchen to the bedrooms at the opposite extremity of the house. To the rear of the hall (at the back of the house) is a bedroom which is next to the kitchen and known as the “boys’ room.” Next to the boys’ room is the bath which is separated from the boys’ room by two closets. One of these cubicles (the one in which the children discovered the fire) is in the boys’ room next to the rear wall of the residence; the other opens into the hall and is known as the “linen closet.”
The evidence establishes beyond doubt there were no electrical fixtures, outlets or receptacles in either the closet in the boys’ room or the adjacent linen closet. It is equally well established that whereas plaintiffs had experienced occasional difficulty with the bathroom light switch, so far as known, it never shorted out and they had not reported this circumstance to their lessor.
We are of the opinion this matter turns upon the testimony of Charles H. Harel-son, State Deputy Fire Marshal, with some fifteen years experience in that department. In substance Harelson testified he examined the premises the day following the fire, assisted by Inspector Smith. He found no evidence of arson and therefore sought some other origin. He quite frankly admitted he could not be positive as to cause but was of the opinion that if he had to assign a source, it would be electrical origin. His conclusion in this regard was based on his finding two wires which appeared to have “shorted out” as evidenced by their “beaded ends.” This evidence was found near the remnants of the family television set located near the front living room wall in the corner adjacent to the girls’ bedroom. The wires, according to Harelson, did not appear to have been connected to the television set. He did state, however, that these wires were of a gauge heavier than that with which the house was wired and were of a type customarily found in television sets. Harelson further explained that where, as in the case at hand, the point of origin is not known and the structure collapses during or following *813 the fire, the point of origination is determined by finding the area of deepest burn. In other words, the spot that is burned the worst denotes the place where the fire started. In this instance he found the area of deepest burn to be the spot where the burned wires were discovered — in the living room and not near the closet in the boys’ room at the rear of the house. In addition, Harelson explained that whereas his report indicates the fire started in the attic, that conclusion was reached on the testimony of firemen and witnesses who reported fire in the attic upon arriving at the scene. He also made it clear that the presence of fire in the attic did not necessarily mean the fire commenced there as fire, once started, rapidly progresses toward a source of air such as a window, vent or other opening.
In summary, Harelson testified he was not certain as to the cause but if he had to make a decision, he would say the origin was electrical but he could not be positive on this score. It is stipulated that if Inspector Smith testified, his evidence would be substantially the same as that of Deputy Marshal Harelson.
If, as. plaintiffs contend, the fire commenced in the closet in the boys’ room, it is reasonably certain it did not start from faulty electrical wiring as there were no wires in either this closet or the adjoining linen closet. If, as Deputy Marshal Harel-son found, the conflagration began in the living room, it may as well have started from the television set as from any other cause. In any event, the record fails to establish the cause of the blaze with any degree of certainty whatsoever.
The burden rests upon plaintiffs to prove by a preponderance of evidence the existence of the vice, defect or condition which initiated the fire. In the record before us the proof offered is suggestive only of a possibility. To conclude liability under such circumstances is to rely solely upon conjecture, speculation and mere probability. On such proof a defendant may not be cast.
The record being devoid of evidence to prove plaintiffs’ case with that degree of certainty required by law, it follows that the jury erred in finding a verdict for plaintiffs herein.
Accordingly, it is ordered, adjudged and decreed that the judgment rendered below in favor of plaintiffs Derle Long and Lorena Long against defendants Charles McMichael and Hartford Accident and Indemnity Company be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of said defendants rejecting and dismissing said plaintiffs’ demands with prejudice, at plaintiffs’ cost.
Reversed and rendered.