CULPEPPER, Judge.
This is a suit for damages to a printing press. An A-frame mounted on a winch truck was lifting the press when one pole of the frame broke, causing the press to fall. The plaintiffs are: (1) Louisa Printing Company, owner of the press, seeking the $300 deductible under its comprehensive insurance policy; and (2) Aetna Insurance Company, insurer of the printing press, who paid $2,700 under its policy for damages to' the press and is subrogated to any claim of its insured against the party responsible for the damages. The defendant is Nolan Guidry, d/b/a Nolan Guidry Welding Works, lessor of the winch truck and employer of its driver. From an adverse judgment the plaintiffs appealed.
The substantial issues are: (1) Was Guidry a lessor of the truck? (2) Did the A-frame break because of a defect or because of an unforeseeable strain placed on it by the swaying of the press?
The general facts show that Louisa Printing Company was moving its office from Main Street in the City of Lafayette to another location. Mr. Tommy Quoyser, manager of the printing company, had contacted Nolan Guidry and inquired whether his winch truck and A-frame could be used to move the heavy printing equipment. On the day in question, Guidry was not present at his place of business when Mr. Tommy Quoyser phoned to request the winch truck and driver. Guidry’s wife received the call and dispatched the truck and driver.
The accident occurred at the new location of the printing company. The printing press had been moved there on a utility trailer pulled by an automobile. Three or four 4' x 4' timbers had been placed across the sides of the trailer and the printing press was resting on top of these timbers ready to be lifted by the winch truck with the A-frame. Mr. Tommy Quoyser had tied a chain around the printing press for use in lifting it. Guidry’s truck driver, Louis Bourque, attached his cable to the *861 chain, winched in the cable enough to take up the slack. He checked the load to see that it was all right and then went hack into the cab of his truck and started picking the press up with the A-frame. Mr. Tommy Quoyser was giving directions to the winch truck driver and to Mr. Bradley Quoyser, who was driving the automobile attached to the trailer. As the winch truck lifted the press the car started pulling the trailer away. The printing press began to sway. One of the gin poles of the A-frame broke and the press fell to the concrete paving completely demolishing it.
The first issue is whether there was a lease agreement between the printing company and Nolan Guidry for the use of the winch truck. Guidry contends that he and Mr. Tommy Quoyser were lifelong friends and that he had never actually quoted him a price for the rental of the truck. Hence, under LSA-C.C. Art. 2671, requiring that the rental price be “certain and determinate” there was no lease agreement.
The evidence shows that although Mr. Guidry’s principal business is that of a welding contractor and he used the truck principally in connection with that business, he also leased the truck to others.
Mr. Guidry admitted he usually leased the truck and driver by the hour at a “standard rate” and that Mr. Tommy Quoyser knew this and expected to be charged such a rental for the truck. Gui-dry also admitted that he had planned to charge a rental for the truck although he had not yet done so. We have no difficulty in concluding that there was a lease agreement. The amount of the rent was the “standard” hourly rate charged by Gui-dry. This is certain and determinate.
The next issue is whether Guidry is liable as lessor of the truck. The duty of care owed by a lessor is set forth in LSA-C.C. Art. 2695 which reads as follows:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
Jurisprudence interpreting this article makes it clear that where the lessee suffers loss, resulting from a defect in the thing leased, he may recover damages from the lessor regardless of the lessor’s ignorance of the defect or latency thereof.[1] The lessor is not an insurer against injuries caused by the thing leased,[2] but he is liable where the lessee proves the existence of a defect which caused the injury. Nickens v. McGehee, 184 So.2d 271 (1st Cir. La.App.1966).
Applying these principles of law to the present case, the issue is whether the printing press fell because of a defect in the A-frame, as contended by the plaintiff; or whether it fell because the trailer, on which the press was resting, began to move before the press was lifted clear, thereby causing the press to begin to sway and placing an unforeseeable strain on the A-frame resulting in its collapse.
The jurisprudence is clear that the burden is on the lessee to prove a defect in the thing leased.[3] After carefully study *862 ing the record, we have concluded that plaintiff has not sustained this burden of proof. The record shows clearly that the gin pole broke “clean” into two parts near a weld. There is no evidence of any preexisting crack, bend or other defect in the pole. The A-frame had been used satisfactorily that same day by the driver, Louis Bourque. According to Guidry and Bour-que, it was capable of lifting 3,000 to 4,000 pounds. The printing press in question admittedly weighed only 1,500 pounds. There is simply no evidence to show a pre-existing defect in the gin pole. However, the fact is that it did break and from this alone a defect must be presumed unless some other cause for the break is shown.
Several witnesses were questioned as to whether the trailer started to move before the winch truck had picked the press up clear of the trailer. The truck driver, Bourque, testified that as he started his winch, to lift the press, he observed in his rear view mirror that one corner of the press was hanging down and remained in contract with a 4' x 4/. While the press was still thus partially on the trailer, the automobile started pulling the trailer away, thus moving the press and causing it to start a swaying motion. This, according to Bour-que, is what caused the pole to break. In an effort to weaken the effect of this testimony, counsel for the plaintiff elicited from Bourque the admission that when he checked the cable, before he started lifting, he went only to the side of the truck from which position he could not tell whether the cable was straight or slanted. However, Bourque steadfastly testified that he thought the cable was straight and that the cause of the press swaying was that the trailer moved before the press was clear.
Curtis Hebert, a salesman for the printing company, was standing nearby, but he could never say positively whether the press was clear of the trailer before the trailer started to move. He contradicted himself several times in this regard and the only logical conclusion is that he simply did not know.
Mark Daigle, also an employee of the printing company, testified positively that he was standing within thirty feet of the press and that it was two feet clear of the trailer before the trailer moved. When asked why he thought the press started to sway, he could give no explanation.
Bradley Quoyser, driver of the automobile which was pulling the trailer, testified he could not see whether the press was clear before he moved the trailer. He simply followed instructions being given by his brother, Mr. Tommy Quoyser. He says he drove the truck about ten feet and got out and saw that the press was swaying and then the gin pole broke. He could give no explanation as to why the press started to sway.
Mr. Tommy Quoyser, who was in charge of this entire moving operation, died before this case was tried and hence the record does not contain his testimony.
Although the district judge did not expressly state, in his short oral opinion at the conclusion of the trial, that the press began to sway because the trailer moved too quick, it is implicit in the court’s ruling that these were the facts found. For, the district judge found no negligence on the part of the truck driver, Bourque.
In our view, this is the more probable conclusion of fact. The testimony itself is about evenly divided, Bourque testifying positively that one corner of the printing press was still hanging down on the trailer when it began to move and Mark Daigle testifying to the contrary that the press was two feet clear of the trailer before it moved. However, the fact is that the press did sway. If the moving of the trailer did not cause it, then the only other cause suggested it that the cable was at an angle when the winch began to lift the press. But Bourque says he checked the cable and there is simply no evidence whatever to show that the cable was at an angle.
It is our conclusion the plaintiffs have failed to prove the cause of the press *863 falling was a defect in the A-frame. The more probable cause is that the trailer began to move before the press had been lifted clear, thereby causing the press to commence a swaying motion which placed an unforeseeable strain on the A-frame.
Guidry was in no way responsible for the movement of the trailer. The evidence shows clearly that Mr. Tommy Quoyser was giving instructions to both the driver of the automobile and the driver of the truck and that it was he who directed the trailer to move. Guidry’s driver, Bourque, was not negligent.
Although plaintiff urges the doctrine of res ipsa loquitur, the facts set forth above show there is no inference of negligence attributable to Guidry.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.

. Anselm v. Travelers Ins. Co., 192 So.2d 599 (3d Cir. La.App.1966); Morgan v. American Indem. Co., La.App., 180 So. 2d 429; Sabin v. C & L Development Corp., La.App., 141 So.2d 482.

. Flynn v. Katz, La.App., 164 So.2d 55.

. In Nickens v. McGehee, 184 So.2d 271 (1st Cir. La.App.1966), writ refused 249 La. 199, 186 So.2d 159, the court said:
It will be noted that to recover under the applicable law, the lessee must establish by a reasonable preponderance of evidence that a vice or defect existed in the premises and that such vice or defect results in the loss or injury for which damages are sought. Under the clear terms of the article, it is immaterial whether the lessor knew of the existence of the vice or defect.