304 So.2d 410 (1973)
Jack PENTON, Plaintiff-Appellee,
v.
BUDGET RENT-A-CAR OF LOUISIANA, INC., et al., Defendants-Appellants.
CONTINENTAL CASUALTY COMPANY and Budget Rent-A-Car of Louisiana, Inc., Plaintiffs-Appellees,
v.
FORD MOTOR COMPANY and Jack Penton, Defendants-Appellants.
Nos. 9470, 9471.
Court of Appeal of Louisiana, First Circuit.
August 28, 1973.
On Rehearing December 17, 1973.
*411 L. Michael Cooper and Wallace A. Hunter, Baton Rouge, for Ford Motor & Ins. Co. of North America.
Bruce Waters, Baton Rouge, for plaintiff-appellee Penton (9470) and defendant-appellee Penton (9471).
Gerald L. Walter, Jr., Baton Rouge, for defendant Robinson Bros.
Carey Guglielmo, Baton Rouge, for defendant-appellee Budget Rent-A-Car of La. (9470) and plaintiff-appellee Continental Casualty (9471).
Before LANDRY, TUCKER and PICKETT, JJ.
Before LANDRY, TUCKER and PICKETT, JJ.
*412 PICKETT, Judge.
These consolidated cases arose out of a one car accident which occurred at approximately 2:30 P.M., on November 5, 1967, on Louisiana Highway 37 (Greenwell Springs Road), near Baywood, Louisiana. The automobile involved was a 1967 Mercury 4 door automobile owned by Budget Rent-A-Car of Louisiana, Inc. (Budget) and being operated by Jack Penton. At the time of the accident the Mercury automobile was under lease to Penton from Budget. As a result of this accident, two suits were filed. Suit Number 9,470 was instituted by Jack Penton for damages resulting from personal injuries against Budget, the owner of the 1967 Mercury automobile, Ford Motor Company (Ford), the manufacturer thereof, Insurance Company of North America, the insurer of Ford, and Robinson Brothers, Inc., (Robinson), the vendor of said automobile. In suit Number 9,471, Continental Casualty Company (Continental), the collision insurer of the 1967 Mercury automobile, and Budget filed suit against Ford and Jack Penton to recover the property damages allegedly sustained to the said automobile. On May 23, 1970, summary judgment was rendered in favor of Robinson in Suit No. 9,471 dismissing it from the suit. Both suits were tried on the merits against the remaining defendants on February 9, 1972. In Suit No. 9,470 judgment was rendered in favor of Jack Penton and against Ford, Insurance Company of North America, and Budget, for the principal sum of $3,083.00, together with legal interest from judicial demand, and cost. In suit No. 9,471, judgment was rendered in favor on Continental and against Ford for the principal sum of $1,237.79 together with legal interest thereon from judicial demand until paid; and in favor of Budget and against Ford in the principal sum of $250.00 together with legal interest thereon from judicial demand until paid. Ford was taxed for all cost in said cause. In Suit No. 9,470, the defendants, Budget, Ford, and Insurance Company of North America, have appealed. Jack Penton has answered the appeal seeking an increase in the quantum of damages awarded him in said judgment. In Suit No. 9,471, the defendant, Ford has appealed suspensively.
The plaintiff, Jack Penton, testified that on Sunday afternoon, November 5, 1967, he rented a 1967 Mercury automobile from Budget, in Baton Rouge, Louisiana, for the purpose of going to Jackson, Mississippi, in order to pick up his wife. Mr. Penton entered into a written lease agreement with Budget under the terms of which Mr. Penton agreed to pay the sum specified in the lease agreement and Budget agreed to provide a vehicle suitable for the intended use. The said agreement, which has been filed in evidence, shows that the speedometer of the vehicle rented by Mr. Penton registered 9,283 miles, at the time he rented it. Mr. Penton left Baton Rouge in the rented automobile by way of Louisiana Highway 37 (the Greenwell Springs Road); and after traveling some fifteen or twenty miles, he reached a rather straight portion of the highway, and while traveling about forty-five miles per hour, he saw a large dog about one hundred yards ahead. As he approached the dog, it attempted to cross the road. Mr. Penton at first applied his brakes lightly and the vehicle seemed to veer to the left. Then he applied his brakes hard, in an effort to avoid striking the dog; and the automobile suddenly went out of control, spun around and came to rest upside down, facing in the direction from which it had come, in a drainage ditch on the south, or right side of the road. As a result of the accident, Mr. Penton suffered personal injuries, for which he seeks to recover damages.
Mr. Penton alleges the accident was caused by the defective braking system of the vehicle. The accident was investigated by State Trooper W. H. Seals, whose report was filed in evidence by stipulation of counsel, because Trooper Seals was not available to testify. It was stipulated that if Trooper Seals were called to testify that he would testify in accordance with the *413 report prepared by him. In support of his claim that the braking assembly on the Mercury was defective, the plaintiff, Jack Penton, testified that he observed that only one skid mark was made by the vehicle after the brakes were applied. The said Trooper Seals called his attention to the single skid mark. Mr. Penton's testimony on that point is supported by a notation of Trooper Seals' report which shows that Mercury laid down 171 feet of skid mark, and contains the statement; "Only left front brakes held causing vehicle to pull to left. Driver overcorrected to right and vehicle spun around and flipped over in ditch."
We are convinced the evidence adduced in the trial of this case shows conclusively that the right front brake assembly of the 1967 Mercury was defective, at the time of the accident. The wrecked vehicle was towed in to Robinson's body shop; and after the body was repaired, it was moved to Robinson's service repair shop, either the same day it left the body shop, or soon thereafter because of a brake problem. Mr. John W. Mister, the service manager of Robinson's repair shop, testified that when the vehicle was brought into the repair shop he drove it and found there did exist a problem with the brakes. The brake assembly of each front wheel was examined. It was found that the left front brake needed no adjustment or repairs, and it was reassembled. But with reference to the right front brake, Mr. Mister said:
"Well, we found that the right front brake, the lining bad, might say worn itself out or, anyway, the lining had destroyed itself from off the shoes, and we had shoe to drum contact, with is iron to iron, metal, and that's what had happened."
The car was still under warranty, and Mr. Mister assumed that the repairs would be paid for by Ford. Therefore, he caused the worn parts of the right brake assembly to be placed in a box to be sent to Ford. However, Mr. Robert Dutschke, The President and General Manager of the Baton Rouge Office of Budget, obtained the discarded parts of the brake assembly and turned them over to Mr. Jack B. Elstrott, a representative of Budget's insurer. The evidence shows that the brake parts were subsequently sent to Ford, and that later Ford returned them, and they were physically in the courtroom at the trial of this case. Mr. Penton introduced the expert testimony of Dr. Gerald Whitehouse, a professor of mechanical engineering at Louisiana State University. Dr. Whitehouse confirmed the fact that the right front brake assembly of the Mercury was badly deteriorated; in fact, much more so than would be expected from normal wear. He expressed the opinion that under normal driving conditions the brakes should have lasted for 25,000 to 30,000 miles; he found that this particular brake assembly had worn enough to produce metal to metal contact between the brake shoes and the drum after only approximately 9,000 miles of driving.
After a careful review of the evidence, we concur in the conclusion of the trial judge that the badly deteriorated condition of the right front wheel brake assembly was the cause of the accident.
In order to fix the responsibility for Mr. Penton's accident, it is important to determine the cause of the defective brake system. Dr. Whitehouse, the expert witness for the plaintiff, Jack Penton, commented relative to the defective brake assembly as follows:
"Given, that the system has not been in any way manually changed by a person then the system could have two or three possible ways that the wear could be accelerated; one of these is strictly materials. Let's say that the molded asbestos covering on the shoes were put on there faulty, that the material wasn't of sufficient quality to withstand the higher temperatures during the braking. That is a possibility. Another possibility might be that the braking device, the *414 actual hydraulic cylinder, would maintain the departures in the extended positions and not return to the normal positions due to something obstructing the position behind the pistons. This is a possibility. One of the possibilities is that the adjusting mechanism could have been assembled wrong. This is a possibility. I think that there are two or three, aside from manual, which you hypothetically said if there has been no manual correction or no manual adjustment to this braking system, that we come back to two or three possibilities that could occur causing the accelerated wear."
Dr. Whitehouse stated it was impossible to determine the original quality of the asbestos lining of the brake shoes because the remaining fragments of the lining had been subjected to such heat that an analysis of the original texture could not be made. However, the brake assembly on each of the other three wheels indicated normal wear. Hence, it appears unlikely that the excessive deterioration of the left front brake assembly was due to the inferior quality of the material. There is no evidence that anyone had tampered with the hydraulic brake cylinder, or that it had malfunctioned.
Dr. Whitehouse's testimony indicated that if the rapid deterioration of the asbestos brake lining of the right front brake assembly was not due to inferior material, or the malfunctioning of the hydraulic cylinder, then it was because the brake shoes had been too tightly adjusted, either manually or automatically. Dr. Whitehouse explained that the adjustment of the brakes shoes on the Mercury involved herein is made by means of an adjusting screw. The tightening or loosening of the adjusting screw causes the brake shoes which are lined with asbestos to move either closer to, or farther from, the drum, depending on the direction the adjusting screw is turned. The braking system of the Mercury was equipped with a self adjusting device, the mechanism of which Dr. Whitehouse explained in great detail. He said the only way the brakes can be tightened is by turning the adjusting screw either manually or by the automatic adjusting device. There is no evidence that the braking system had been manually adjusted at any time. To the contrary, Mr. Dutschke testified positively that relying on his memory and such records as Budget had with reference to the Mercury, it had never had any maintenance or repair work of any kind done on it prior to November 5, 1967. The evidence shows that Robinson did all of Budget's repair and maintenance work. Mr. John W. Mister, Robinson's service shop manager, said Robinson had no record of any repair work done on the Mercury.
Assuming the brakes had not been tampered with manually, Dr. Whitehouse opined that the brakes were tightened by the automatic adjusting device. He explained that normally the adjusting mechanism automatically turns the adjusting screw and tightens the brake shoes when the brakes are applied while the vehicle is backing. In the normal use of an automobile, it is operated in reverse frequently enough to automatically tighten the brakes sufficiently. Dr. Whitehouse expressed the opinion that the automatic adjusting device on the Mercury was installed in such manner that it caused the adjusting screw to tighten the right front brake shoes, when the brakes were applied while the Mercury was traveling in a forward direction. In further support of his opinion, he pointed out that this particular adjusting screw was damaged when it was being loosened, probably when the mechanic disassembled the braking assembly. The fact that the adjusting screw was damaged indicated that the mechanic had difficulty in loosening it. All of which supported his opinion that the automatic adjusting device was improperly installed so that it caused the adjusting screw to tighten the brake shoes when the brakes were applied while the vehicle was moving forward, instead of backwards.
*415 The defendant, Ford, has complained the parts of the brake system examined by Dr. Whitehouse and physically exhibited in the trial of the case were not identified as the parts taken from the right front brake assembly of the Mercury. Mr. Mister testified that the brake system was disassembled under his supervision; and the parts, consisting of two brake shoes, a brake drum, an adjusting screw and one selfadjusting cable, removed from the vehicle, were turned over to Mr. Dutschke, who gave them to Mr. Jack B. Elstrott, the claims supervisor for Robinson's insurer. The parts were subsequently photographed, and turned over to Ford; and Ford ultimately returned them. Although some of the witnesses did not identify the brake parts, the Trial Court obviously believed they were the identical parts removed from the Mercury.
The Trial Judge held that the facts of this case justified the application of the doctrine of res ipsa loquitur; and that Ford was liable for the damages caused by the accident. Counsel for Ford and its insurer argue strenuously that the Trial Judge erred in applying the doctrine of res ipsa loquitur to the facts in this case so as to render Ford liable for the damages sustained. The rule of res ipsa loquitur is stated in 45 C.J., paragraph 768, at page 1193, as follows:
"Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. This statement of the rule of res ipsa loquitur, based on the expression in an Early English case, which has been widely quoted with approval, has been in substance most frequently adopted and applied in subsequent decisions so that the occurrence of an injury under the circumstances therein set forth raises a presumption or permits an inference that the party charged was guilty of negligence."
The application of the doctrine of res ipsa loquitur is aptly expressed on page 543 of 37 Words and Phrases, Permanent Edition, as follows:
"The application of the doctrine of `res ipsa loquitur' permits the trier of fact, in absence of evidence of specific acts of negligence, to reason from the result back to the cause, that is, to infer fault on the part of the person having control of some instrumentality from the failure of its operation to terminate in a safe or proper result when ordinarily a safe and proper result follows the exercise of care. Johnson v. Colp, 300 N.W. 791, 792, 211 Minn. 245."
In Lutheran Church of Good Shepherd v. Canfield, 233 So.2d 331, this Court said:
"It is settled in our law that the doctrine of res ipsa loquitur applies only when the instrumentality alleged to have caused the damage is in the actual or constructive control of the defendant, or where plaintiff has proved freedom of fault on the part of all through whose hands the instrumentality passed after leaving defendant" (Emphasis supplied.)
Dr. Whitehouse expressed the opinion that the accelerated wearing of the right front brake assembly was due to the brake assembly having been adjusted too tightly, either manually or by the automatic adjusting device. Assuming the brake assembly was not adjusted manually, then the tightening of the brake had to be made by the automatic adjusting device. Dr. Whitehouse explained that if the undue tightening of the brake assembly was made by the automatic adjusting mechanism, it could only result from the improper installation of the brake assembly.
The evidence discloses that the Mercury automobile was sold by Robinson, *416 Ford's authorized representative, to Budget. Robinson denied having made any adjustments to the brakes on the vehicle prior to the accident. Budget denied having tampered with the brakes in any way and submitted evidence that the vehicle was serviced only at the Johnny Rogers Esso Station, and that such service did not include any repairs or brake adjustments. It is our opinion that the plaintiff, Jack Penton, has proved in every way available to him that no one through whose hands the vehicle passed after leaving Ford caused the brakes at any time to be manually adjusted. Therefore, we concur in the finding of the Trial Court that the plaintiff has made out a prima facie case of negligence against Ford so that the doctrine of res ipsa loquitur is applicable. Ford has not submitted any evidence to overcome the presumption of negligence on its part. It is true, as argued by counsel for Ford that there was the possibility of the brake assembly having been manually adjusted. But that is mere speculation; and not sufficient to overcome the presumption of negligence on the part of Ford.
Counsel for Ford has plead the contributory negligence of the plaintiff, Jack Penton. The Trial Court, in his written reasons for judgment, stated:
"In spite of testimony that indicates he (Jack Penton) may have had some warning of the impending failure of the brakes, because of a slight pulling to the left, this Court feels that this would not be enough to adequately warn him that such a failure as occurred was imminent. Also, despite implications that he may have lost control of the automobile through his own miscalculation, it seems apparent that any man faced with that situation would fare no better than Mr. Penton did. Thus it is the finding of this Court that Ford Motor Company was negligent toward Jack Penton, and that negligence was the sole proximate cause of his injury."
We concur in the conclusion of the Trial Court that Mr. Penton was not contributorily negligent and that the negligence of Ford was the sole proximate cause of the accident and of Mr. Penton's injuries.
The plaintiff, Jack Penton, contends that irrespective of the latent defect or malfunction of the Mercury automobile, rented from Budget, that Budget and its insurer are liable to him under the provisions of Louisiana Revised Civil Code Article 2695, which reads as follows:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
In the case of Aetna Insurance Company v. Guidry, 216 So.2d 859, the Court held that where a lessee suffers loss resulting from a defect in the thing leased, he may recover damage from the lessor regardless of lessor's ignorance of such defect or the latency thereof. In that case the court said:
"Jurisprudence interpreting this article makes it clear that where the lessee suffers loss, resulting from a defect in the thing leased, he may recover damages from the lessor regardless of the lessor's ignorance of the defect or latency thereof. The lessor in not an insurer against injuries caused by the thing leased, but he is liable where the lessee proves the existence of a defect which caused the injury. Nickens v. McGehee, 184 So.2d 271 (1st Cir. La.App. 1966.)"
We concur in the conclusion of the Trial Court in finding that the defendant *417 Budget is liable to Mr. Penton under the lease contract. The Trial Judge in his written reasons for judgment appropriately said:
"As to the defendant Budget Rent-A-Car, this Court can find no evidence of negligence. The defect present in the car was of such a nature that only a special and rigorous inspection would have revealed it. Since there was apparently no indication of any brake problem before Mr. Penton drove the car, this Court must hold that Budget met the standard of care under the circumstances, and this was not negligent. However, Budget was under a higher duty to Mr. Penton, that of a lessor. According to Civil Code Article 2695, a lessor must indemnify a lessee for loss or injury resulting from defects in the leased object, even though the lessor has no knowledge of those defects. Because sufficient facts were brought forward at trial to prove the existence of a defect and to show that the defect caused injury to Mr. Penton, and because the lease agreement was introduced at trial without objection, this Court must hold that the defendant Budget Rent-A-Car is liable to Mr. Penton under the lease contract."
Mr. Penton testified that the accident shook him up quite severely. His left leg and left shoulder were bruised and caused him considerable pain. He stated that his left leg recovered and no longer bothers him. But he has never recovered from his shoulder injury. His shoulder bothers him more in the winter than at any other time; but that because of the kind of work he does (he is a pipe fitter) he necessarily has to use his arm a lot and that after working all day it becomes sore and stiff. Dr. Allan Jackson, an orthopedic specialist, examined Mr. Penton soon after the accident. He found a large bruise on the left thigh and soreness in the left shoulder. X-rays disclosed no fractures or other abnormality. He recommended that Mr. Penton remain away from his work for one week and that he then return to him for follow up examination. Mr. Penton returned on November 14, 1967 for an examination, and Dr. Jackson found him greatly improved. However, he still had the large bruised area on the left thigh. He found little or no change in Mr. Penton's left shoulder. He released Mr. Penton to return to his work. On subsequent examinations he found that Mr. Penton suffered from bursitis in his left shoulder. He stated that the bursitis could have very well resulted from the injury sustained in the automobile accident. But not having seen Mr. Penton prior to the accident, Dr. Jackson could not say with certainty that the bursitis was casually connected with the injuries sustained in the accident.
The trial court awarded Mr. Penton $3,000.00 for his injuries and the accompanying pain and suffering and $83.00 for medical expenses. The Trial Judge having seen Mr. Penton and having heard him testify, as well as having heard the evidence of the treating physician, we cannot say that he abused his "much discretion", or that the award is either inadequate or excessive.
For the reasons set forth in Suit No. 9,470, we concur in the finding of facts, and the award for damages made by the Trial Judge, in Cause No. 9,471, as explained in his written reasons for judgment, in which he said:
"In Suit No. 130,482, the plaintiff Continental Casualty Company, subrogee of the plaintiff, Budget Rent-A-Car, is seeking recovery of $1,237.79 paid by it to Budget under a contract of insurance. The Plaintiff, Budget Rent-A-Car, is seeking recovery of its deductible, $250.00. Since this Court has determined in the companion case that the primary responsibility for the defective brake assembly lies with Ford Motor Company, it is the decision of this Court that Ford Motor Company has violated its sales warranty and thus is responsible for the loss insured by Budget and its subrogee, *418 the Continental Casualty Company. The defendant, Jack Penton, is free from negligence."
Accordingly, for the above and foregoing reasons, the judgments appealed are affirmed at appellants' costs.
Affirmed.
TUCKER, J., takes no part.

ON REHEARING
PICKETT, Judge.
In our original opinion we affirmed the judgment of the lower court, wherein that court held the defendant, Ford Motor Company (Ford), at fault in an automobile accident caused by the malfunctioning of the brake assembly of the right front wheel of a 1967 Mercury automobile which was manufactured, assembled and sold by Ford. Defendants, Ford and its insurer, Insurance Company of North America, applied for a rehearing on the ground that we erred in affirming the judgment of the lower court which was based solely on the doctrine of res ipsa loquitur applied to an incorrect factual determination.
After a careful review and evaluation of the evidence in the record, we have concluded that we were in error in basing Ford's liability on negligence, or that the doctrine of res ipsa loquitur was applicable. However, we concluded that the accident was due to a malfunction of the brake assembly in the right front wheel of the vehicle involved in the accident. Ford designed, manufactured and installed that brake assembly. Hence, Ford is responsible if there was either faulty design, defective material, or improper installation of the brake mechanism, the malfunctioning of which caused the accident. The applicable rule of the liability of a manufacturer in a products liability case is set out in Meche v. Farmers Drier & Storage Company, La.App., 193 So.2d 807, as follows:
"A manufacturer or seller of a product which involves a risk of injury to the user is liable to any person whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated. Smith v. New Orleans & Northeastern Railroad Co., La.App. 1 Cir., 153 So.2d 533; Samaha v. Southern Rambler Sales, Inc., La.App. 4 Cir., 146 So.2d 29; Restatement of Torts 2d, Section 402 (A); Prosser, The Law of Torts, Chapter 19 (3d ed., 1964); 65 C.J.S. Negligence § 100(2). Cf. also: Percy, Products LiabilityTort or Contract or What?, 40 Tul.L.Rev. 715 (1966); Note, Torts-Strict Liability of the Manufacturer, 23 La.L.Rev. 810 (1963)."
We adhere to our original opinion that the badly deteriorated condition of the right front wheel brake assembly was the cause of the accident. We agree with the applicants that the evidence fails to show that the brake assembly was made of inferior material, or that there was any defect in the design or manufacture of the brake mechanism. Based on the evidence of Dr. Gerald Whitehouse, plaintiff's expert witness, the excessive wearing of the brake shoes' lining was due to the brake shoes having been adjusted too tightly. In fact, the applicants agree with this conclusion. In their application for a rehearing, they said:
"Defendants will assume for the purpose of this application that the occurrence of the accident was due solely to a malfunction in the right front brake assembly. The evidence is clear that the malfunction occurred because the brake shoes were improperly adjusted too closely to the brake drum, thus causing the asbestos lining to wear inordinately fast.

*419 The issue is thus why the improper adjustment occurred causing the rapid wear to the right front brake shoes."
Dr. Whitehouse expressed the opinion that the accelerated wearing of the right front brake assembly was due to the brake assembly having been adjusted too tightly, either manually or by the automatic adjusting device. To render Ford liable in this case, it is necessary that the plaintiff show circumstances that leave no room for a presumption other than the improper installation by Ford of the right front brake system on the Mercury was the proximate cause of its deterioration. The plaintiff produced evidence that discloses that the vehicle in question was sold by Ford's authorized agent, Robinson, to Budget; and that neither Robinson, nor Budget, tampered with the brake system. But Budget rented the Mercury to various persons whose identities are not revealed; and the Mercury was used by the employees of Budget, none of whom testified except Mr. Dutschke. It had been driven in excess of 9,000 miles. The evidence shows that the brakes could have been tightened by anyone who could use a screw driver. The plaintiff made no attempt to show freedom from fault on the part of any parties who had actual temporary possession of the vehicle, except Robinson and Budget. Plaintiff's own witness, Dr. Whitehouse, has said the tightening of the brake shoes of the Mercury could have happened in either of two ways; that is, they could have been manually tightened, or the tightening could have been caused by the improper installation of the braking system.
The plaintiff had the burden of showing that Ford was responsible for the deteriorated condition of the brake assembly that caused the accident. The plaintiff has failed to show by a legal preponderance of the evidence that Ford was responsible for the accident. Therefore, the demands against Ford must be rejected.
For the reasons assigned, the judgment of the district court casting the defendants, Ford Motor Company and the Insurance Company of North America, is overruled and reversed, and the original judgment of this court casting said defendants is recalled and set aside, and the demands against said defendants rejected, at plaintiffs' costs. Except as amended, our original judgment is affirmed.
Amended and affirmed.