532 So.2d 407 (1988)
Ralph Vernon CARMICHAEL Plaintiff-Appellant,
v.
GENE ALLEN AIR SERVICE, INC., et al., Defendants-Appellees.
Frances Sue BLACKMON, Individually and on Behalf of Marion Elizabeth Blackmon, Toni Lynn Blackmon, and Cynthia Sue Blackmon
v.
GENE ALLEN AIR SERVICE, INC., Gulf Coast Aero-Club, Inc. The Succession of G.C. Perry, Jr., Cessna Aircraft Company, Inc., and Toledo Bend Air Service.
Joey WOODARD, Kimberly Sue Woodard and Karen Woodard Augustine
v.
GENE ALLEN AIR SERVICE, INC., Gulf Coast Aero-Club, Inc., The Succession of G.C. Perry, Jr. and Cessna Aircraft Company, Inc.
No. 87-701.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Writ Denied December 9, 1988.
*408 Landry, Watkins & Bonin, William A. Repaske, New Iberia, for plaintiff/appellant.
Phelps, Dunbar, Marks, Claverie & Sims, Stephen P. Hall, New Orleans, Blair A. Bisbey, Jasper, Tex., Plauche, Smith & Nieset, A. Lane Plauche, Lake Charles, Voorhies & Labbe, Richard Chappuis, Lafayette, Deutsch, Kerrigan & Stiles, David L. Campbell, New Orleans, Woodley, Barnett, Williams, Fenet, Palmer & Pitre, Henry Yoes, Lake Charles, for defendants/appellees.
Before GUIDRY, FORET and STOKER, JJ.
STOKER, Judge.
These suits arise out of an airplane crash which occurred on September 26, 1983 in Vernon Parish. Ralph Vernon Carmichael, Everett Ray Woodard and George Olen Blackmon were passengers in the Cessna 172 which was piloted by G.C. Perry, Jr. Perry, Woodard and Blackmon perished in the crash. Carmichael sustained serious bodily injuries as a result of the crash. Suits were filed by Carmichael and the survivors of Woodard and Blackmon against Gene Allen Air Service, Inc. (Gene Allen), Gulf Coast Aero-Club, Inc. (Gulf Coast), the Succession of G.C. Perry, Jr., Cessna Aircraft Company, Inc. (Cessna) and Toledo Bend Air Service (Toledo Bend).[1] These suits were consolidated in the court below and remain consolidated on appeal. Separate opinions will be rendered in Frances Sue Blackmon, individually, and on behalf of Marion Elizabeth Blackmon, Toni Lynn Blackmon and Cynthia Sue Blackmon v. Gene Allen Air Service, et al, No. 87-702 and Joey Woodard, Kimberly Sue Woodard and Karen Woodard Augustine v. Gene Allen Air Service, Inc., et al, No. 87-755.
By second supplemental and amending petitions, the plaintiffs named as a defendant, Avemco Insurance Company (Avemco), as liability insurer of Gene Allen, Gulf Coast and Perry. The basis of the plaintiffs' claim against Avemco is that it provided a policy of liability insurance for the pilot, Perry, covering the damages sought by the plaintiffs. After answering the plaintiffs' petitions Avemco filed a motion for partial summary judgment as to the claim that it was an insurer of Perry asserted by the plaintiffs. Avemco denied coverage relying on a policy provision which excludes coverage to renter pilots such as Perry. After a hearing on the motion, the trial court granted the partial summary judgment in favor of Avemco, dismissing the plaintiffs' claims against it as insurer of Perry. Plaintiffs have appealed this judgment. The plaintiffs assert in these appeals that it was error to grant the motion for partial summary judgment because there exist genuine issues of material fact concerning whether there was a rental or lease agreement between the parties.

FACTS
On September 26, 1983 Perry contacted Max Griffin, the owner of Toledo Bend, *409 located near DeRidder, to inquire about the rental of a four-place aircraft for a flight to Many, Louisiana. Griffin informed Perry that his Cessna 172 was unavailable because it was down for repairs. Perry asked Griffin to try to find him another aircraft to rent somewhere else. Griffin then called Gene Allen in DeQuincy to inquire about the availability of an airplane. Allen had a Cessna 172 available which belonged to Gulf Coast. Allen rented the airplane for the club when its members were not using it. Allen agreed to send the airplane to Griffin. A local pilot, Dennis Wynne, flew the airplane from DeQuincy to DeRidder for Gene Allen.
Perry and his passengers were waiting at Toledo Bend for the arrival of the airplane. When it arrived, Perry, Blackmon, Woodard and Carmichael boarded the plane and took off. The airplane crashed later that night after takeoff from the Leesville airport.

MOTION FOR PARTIAL SUMMARY JUDGMENT
A motion for summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Plaintiffs opposed the defendant's motion for partial summary judgment on the basis that Avemco failed to prove that a rental agreement existed between Perry and Toledo Bend or Gene Allen. Plaintiffs have not argued that the policy exclusion is in any way vague or ambiguous. The applicability of the exclusion where there is a rental agreement is not at issue; the issue is whether there was a rental agreement in fact.
The trial court relied on the deposition testimony of Max Griffin, Gene Allen and Dennis Wynne to determine that no genuine issue of material fact existed. Plaintiffs argue that the testimony establishes only that Perry and Toledo Bend had an ongoing business relationship concerning plane rentals, but there is no proof that the Cessna 172 was the subject of a lease agreement on September 26, 1983. In support of this assertion that no price was ever agreed upon by the parties, plaintiffs argue that Griffin himself admitted in deposition testimony that no discussion was had concerning price and no bill for the rental was ever sent to Perry's widow by either Toledo Bend or Gene Allen.
The thrust of plaintiffs' argument is that absent an agreed upon price at the time the plane was taken by Perry, an essential element of the contract of lease has not been established. Without that element there can be no valid lease. LSA-C.C. art. 2670.
The deposition testimony of Gene Allen was that he was contacted by Max Griffin concerning the availability of a Cessna 172 to rent for a trip to Many. Allen was not aware at the time of the initial contact that the plane would be rented to Perry. The airplane was ferried by Dennis Wynne who testified that it was his understanding that the plane was to be rented. Max Griffin testified that Perry contacted him for a plane rental as was his custom. Griffin testified that he and Perry had been doing business for approximately two years and that Perry rented planes from him on an average of six times per month. Griffin testified that Perry was billed on a monthly basis for these rentals as opposed to being billed when he returned a plane. Griffin's customary practice was to have a ticket filled out at the time a plane was taken showing the renter's name, address, the time the plane was taken, the type of aircraft and the hourly rate. When the plane was returned the hours were checked and the customer billed accordingly. No rental agreements were signed when a plane was rented.
When Griffin secured an airplane from another air service for a customer, billing was handled one of two ways: either the air service billed Griffin and he in turn billed the customer or the air service billed the customer directly. In Perry's case, Griffin testified that he contemplated that Gene Allen would bill Perry directly.
*410 Griffin testified that the hourly rate for the Cessna 172 was $48, but that he did not discuss the rate or billing arrangements with Perry at any time. No bill was ever sent to Perry's widow.
The plaintiffs rely on the case of Smith v. Ranger Insurance Company, 301 So.2d 673 (La.App. 3d Cir.1974) as support for their arguments. The Smith case dealt with a policy provision which excluded coverage for the carrying of passengers for hire or reward. The plaintiff's airplane was destroyed and his insurer declined to pay the property damage claim because the flight, during which the plane was destroyed, was a charter. The court of appeal found that the evidence and testimony was "hopelessly confused and contradictory" as to whether a rental agreement existed and affirmed the trial court's finding that the plaintiff had failed to establish the essential elements of lease, particularly the price. We do not believe that the facts of Smith are controlling in the case before us. The parties in Smith lacked the history of business dealings present herein between the parties and there is no conflict or confusion in the testimony presented. Moreover, we believe the price was certain and determinate. We do not find it persuasive that no bill was sent to Perry's widow in determining that no lease agreement existed.
The trial court did not articulate its reasons for finding a lease agreement existed beyond its reference to certain pages of deposition testimony which we have summarized hereinabove. It is apparent from the court's reliance on this testimony that it found that the facts and circumstances established that a lease agreement was intended and did in fact exist. We cannot say that the trial court was clearly wrong in granting a partial summary judgment in favor of Avemco.
The essential elements of a contract of lease are, as with a sale, the thing, the price and the consent. LSA-C.C. art. 2670. However, it is not necessary that the price be a fixed sum, as long as it is certain and determinate. LSA-C.C. art. 2671; Mouton v. P.A.B., Inc., 450 So.2d 410 (La.App. 3d Cir.), writ denied, 458 So.2d 118 (La.1984).
It has been held that the intention necessary to create the contract of lease may be inferred from established facts, circumstances, and acts of the contractants. Pelican State Bank v. Webb, 175 So. 855 (La. App. 2d Cir.1937). See also Aetna Insurance Company v. Guidry, 216 So.2d 859 (La.App. 3d Cir.1968). "The price, as to amount, may be uncertain or dependent upon certain eventualities, but the thing must be definite and certain." 175 So.2d at 856.
In Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171 (La.1980) the Supreme Court found that a contract of sale had been perfected although the parties did not state a price certain in money at the time of contracting. The court found that the history of previous dealings between the parties and other factors indicated that the parties consented to buy and sell at a reasonable price and there was a valid contract of sale between the parties.
If the requirements of a lease are the same as those of a sale, then the same analysis can be utilized to find a contract of lease based upon surrounding facts and circumstances when no certain price was stated at the time of contracting. We have no trouble concluding, as did the respective courts in Aetna Insurance Company v. Guidry, supra, and Benglis Sash & Door Co. v. Leonards, supra, that a valid contract existed, namely a lease, between Perry and Toledo Bend and between Toledo Bend and Gene Allen. Given this conclusion, there exist no genuine issues of material fact and the subject exclusion would provide no coverage for the plaintiffs' claims. Therefore, mover is entitled to partial summary judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Various other suits were filed and consolidated below with the suits which are the subject of these appeals; however, those suits are not before the court in these appeals.